# FOR PUBLICATION

FILED & ENTERED

APR 20 2015

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY jeanmari DEPUTY CLERK

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

RIVERSIDE DIVISION

| | |
|---|---|
| In re: | Case No.: 6:14-bk-21126-SY |
| CAROLYN DEUTSCH | Chapter 13 |
| Debtor | **MEMORANDUM DECISION DENYING CONFIRMATION OF DEBTOR'S CHAPTER 13 PLAN** |

    Carolyn Deutsch (the "Debtor") filed her voluntary chapter 7[1] petition on September 2, 2014, and later converted her case to chapter 13. The Debtor's Chapter 13 Plan (the "Plan") relies on contributions from a nondebtor third party in order to enable her to make plan payments. Without the contributions, the Debtor's monthly take-home income is insufficient to pay all of her expenses, let alone the proposed Plan payments.

    Chapter 13 plans premised on contributions from family or friends are much too common before the court, and are often proposed by debtors in their impractical and mostly futile attempts to save homes that are over-encumbered by secured debts.

---

[1] Unless otherwise indicated, all chapter, section, and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

Many of these chapter 13 plans not only fail to meet the requirements for confirmation under § 1325 but also defeat the primary purpose of bankruptcy for individual debtors—that of the fresh start. See Kenneth N. Klee & Whitman L. Holt, Bankruptcy and the Supreme Court: 1801-2014, at 316-19 (2015) (quoting Williams v. United States Fidelity & Guaranty Co., 236 U.S. 549 (1915)). Rather than providing a discharge and a fresh start, a chapter 13 plan premised on contributions spreads the burden of satisfying the debtor's debts and obligations to others (often to the debtor's children or parents). The Debtor's Plan is just such a plan and is the very antithesis of the fresh start that the Bankruptcy Code intended.

The court now denies confirmation of the Debtor's Plan because it is not feasible as required by 11 U.S.C. § 1325(a)(6) and because the Debtor is not an individual with regular income as defined by 11 U.S.C. § 101(30). Since the Debtor will be unable to continue under chapter 13, her case will be converted back to chapter 7.

## I.    PROCEDURAL BACKGROUND

The Debtor originally filed her bankruptcy case under chapter 7, and the chapter 7 trustee's Report of No Distribution was entered on October 9, 2014. Rather than obtaining a discharge under chapter 7, the Debtor subsequently filed a motion seeking conversion of her case to chapter 13, which the court granted. Debtor's Mot. to Convert Case, ECF No. 14; Order on Debtor's Mot. to Convert Case, ECF No. 27. At the same time, she also filed her proposed Chapter 13 Plan and amended schedules.[2] Ch. 13 Plan, ECF No. 17; Amended Schedules, ECF No. 16. The Debtor subsequently filed the Contribution Declaration of Ben Mayo in support of her proposed plan on October 28, 2014 (the "Mayo Declaration"). Mayo Decl., ECF No. 20.

---

[2] The Debtor filed her proposed chapter 13 Plan and amended schedules before the order converting her case was entered. The Debtor did not file a new chapter 13 plan or further amended schedules after conversion was granted, and the October 22, 2014 documents remain the operative documents for this determination.

2

The hearing on confirmation of the Debtor's Plan was originally held on December 30, 2014, and was continued to February 24, 2015. At the February 24, 2015 confirmation hearing, the court raised its concerns regarding the Debtor's reliance on a nondebtor contribution to fund her plan payments. The hearing was then continued to April 7, 2015, and the Debtor's counsel was afforded the opportunity in the interim to file whatever supplemental briefing or evidence he thought appropriate on the contribution issue. The Debtor then filed the Contribution Declaration of Avelina Valle on March 9, 2015, which was executed by her mother, (the "Valle Declaration"). Valle Decl., ECF No. 65. No other documents were filed, and counsel did not offer any further evidence at the continued hearing on April 7, 2015. He instead argued that the Debtor was current on plan payments, that the remaining issues with the chapter 13 trustee had been resolved, and that the "back-up" contributions from the Debtor's mother were sufficient. The court took this matter under submission at the conclusion of that hearing.

II.    FACTUAL BACKGROUND

The Debtor's Plan requires her to make payments of $490.00 per month for 57 months, followed by payments of $1,188.00 per month for three months. Ch. 13 Plan, ECF No. 17. The Debtor's amended Schedule I reflects that she has $5,000.00 in combined monthly income, which includes $700.00 per month described as "[c]ontribution income from boyfriend." Sch. I: Your Income, ECF No. 16. The Debtor's Schedule J reflects $4,510.00 in monthly expenses, leaving $490.00 in net income per month. Sch. J: Your Expenses, ECF No. 16. Based on her schedules, the Debtor is incapable of making her proposed Plan payments, or plan payments in any amount, if she does not receive the nondebtor contribution.

At the February 24, 2015 confirmation hearing, the Debtor's counsel confirmed that Ben Mayo ("Mayo") was the Debtor's boyfriend and indicated that the relationship was relatively recent. Mayo testified in his declaration that he lives with the Debtor, that he intended to begin contributing $700.00 per month to the Debtor

3

1  in November 2014, that his income is regular, and that he intends to contribute
2  money to the Debtor for as long as he can financially afford to do so. Mayo Decl. ¶¶
3  1–4. Attached to the declaration are what appear to be two unauthenticated paystubs
4  for Mayo issued in the month of October 2014. Id. at Ex. A. The paystubs reflect
5  $864.69 in net income for that month. Id.
6        Avelina Valle ("Valle") testified that in the event that Mayo fails to pay part or
7  all of the $700.00 monthly contribution she will step in and pay it for the duration of
8  the case. Valle Decl. ¶¶ 3, 5. She stated in her declaration that her income consists of
9  Supplemental Security Income from Social Security in the amount of $1,182.35 per
10 month and business income in the approximate amount of $2,795.00 per month
11 attributable to a partial ownership interest in a hospice in Colorado. Id. at ¶ 4.
12 Attached to her declaration is a one-page, unauthenticated printout that appears to
13 reflect transactions in a bank account for the period from February 10 to 24, 2015. Id.
14 at Ex. A. The printout does show two deposits in the amounts of $1,182.35 and
15 $2,795.00. Id. However, it also shows that the account balance was only $554.60
16 before the $1,182.35 deposit, and it had dropped to $52.33 before the $2,795.00
17 deposit. Id. The balance drops again to $54.33 before another deposit in the amount
18 of $120.00 is made from an online transfer. Id.
19       The Debtor did not provide any evidence other than the two declarations in
20 support of the contribution payments from either Mayo or Valle.
21     III.    DISCUSSION
22         A.  Feasibility
23       The Debtor's Plan is only feasible if her income includes the $700.00 monthly
24 contribution from Mayo or Valle because the Debtor's own take-home income of
25 $4,300.00 is insufficient to meet even her regular monthly expenses of $4,510.00. In
26 order for a chapter 13 plan to be confirmed, a debtor must demonstrate that she "will
27 be able to make all payments under the plan and to comply with the plan." 11 U.S.C.
28 § 1325(a)(6). Reliance on contributions from family is disfavored, but not prohibited.

4

1  In re Schwalb, 347 B.R. 726, 759 (Bankr. D. Nev. 2006). A debtor's plan can be
2  feasible, even though it relies on contributions, where there is a firm commitment by
3  the family member to make the contributions and a long and undisputed history of
4  providing for the debtor. Id. at 759–60. However, where no evidence in support of the
5  contribution is submitted, the plan is not feasible. See In re Khan, 2015 WL 739854,
6  at *3–4 (Bankr. D. Colo. Feb. 19, 2015) (holding that plan was not feasible where
7  business income was speculative and "occasional contributions" from wife's family
8  were not documented or otherwise supported by evidence); In re Crowder, 179 B.R.
9  571, 574 (Bankr. E.D. Ark. 1995) (dismissing chapter 13 case where debtor's father
10 did not affirm any specific amount or other assistance that would continue for
11 duration of the plan); In re Norwood, 178 B.R. 683, 691 (Bankr. E.D. Penn. 1995)
12 (denying confirmation where debtor did not provide any evidence of the amount of
13 mother or sister's income or of their other expenses and liabilities). The question of
14 feasibility is fact-specific and dependent upon evidence submitted by the debtor. In re
15 Welsh, 2003 WL 25273855, at *3 (Bankr. D. Idaho Feb. 26, 2003). Evidence that
16 would support the feasibility of nondebtor contributions includes evidence as to the
17 ability, motivation, and unqualified commitment of the nondebtor to make the
18 contributions. Id. at *3 n.5.
19      The court identifies several factors in the cases cited above as commonly
20 considered in determining the feasibility of chapter 13 plans involving contribution
21 payments from nondebtors. As a result, this court considers the following factors in
22 determining whether the Debtor's Plan is feasible:
23 (1) the nondebtor's relationship to the debtor and motivation in making the
24      contributions;
25 (2) the nondebtor's long and undisputed history of making the contributions or
26      otherwise providing support for the debtor;
27 (3) the unqualified commitment of the nondebtor to make the contributions in a
28      specific amount for the duration of the chapter 13 plan; and

5

(4) the financial ability of the nondebtor to make the proposed contributions, including expenses and liabilities of the nondebtor that might take precedence over the contributions.

"The Debtor, as the chapter 13 plan proponent, has the burden of proof on all elements of plan confirmation." Meyer v. Hill (In re Hill), 268 B.R. 548, 552 (B.A.P. 9th Cir. 2001). Therefore, the debtor bears the burden of providing admissible evidence to support each of the relevant factors and prove that a contribution payment is sufficiently reliable to render a proposed chapter 13 plan feasible.

### 1. *Contributions by Mayo*

In the present case, the Debtor has failed to provide sufficient evidence to persuade the court that the contributions from Mayo meet the requirements to establish feasibility. First, the only evidence submitted regarding Mayo's relationship to the Debtor and his motivation to make the contributions merely indicates that he lives with the Debtor. Mayo Decl. ¶ 1. Counsel's representations at the confirmation hearing that Mayo is the Debtor's boyfriend and that the relationship is relatively recent, while not admissible, actually imply that there is not a reliable relationship or strong motivation to continue making the contributions over the five-year length of the Plan.

Similarly, there is no long and undisputed history Mayo of making the contributions or otherwise supporting the Debtor. Mayo testifies that the contributions will only begin postpetition in November 2014. Mayo Decl. ¶ 3. At this time, the contributions have presumably continued for only five or six months, and this is a far cry from the numerous years that other courts have found persuasive.

The third factor also weighs against finding the contribution payments to be feasible. Mayo testified that he intends to contribute only for as long as he is financially able to. Mayo Decl. ¶ 4. This commitment is qualified and conditional, rather than the "firm commitment" or "unqualified commitment" that other courts

have required. According to Mayo's testimony, the contributions could stop this very month if he feels that they impose a financial burden on him.

Finally, there is insufficient evidence of Mayo's ability to make the contributions. He simply states conclusively that his income is regular and attaches two paystubs for October 2014 totaling $864.69 in net monthly income. Mayo Decl. ¶ 4, Ex. A. There is no evidence regarding what type of employment Mayo is engaged in or whether he is working on an at-will or contract basis. It appears from the paystubs that he is paid an hourly wage, but there is no evidence regarding the number of hours expected, guaranteed, or regularly received. There is no evidence of what other expenses or liabilities Mayo may have that could take precedence over the contribution payments. Since debtors are required to provide their income for the past two calendar years in the Statement of Financial Affairs (Official Form 7) and their average monthly income for the six full months prior to the petition date in the Chapter 13 Statement of Your Current Monthly Income and Calculation of Commitment Period (Official Form B 22C1), it seems only reasonable that a nondebtor contributing to a debtor's chapter 13 plan provide at least six months of financial information to support the feasibility of their proposed contributions. Mayo has not done so in this case. Further, the low amount of income reported by Mayo and the fact that the amount varies between the two checks ($385.16 on October 3, 2014, and $479.56 on October 24, 2014) indicates that he might not be financially able to make the $700.00 monthly contributions for long. Mayo Decl. Ex. A. Substantially all of his income is being pledged to the contribution payments, and a modest decrease in income or increase in other expenses would render him financially unable to make the payment for one or more months.

Each factor the court considers to determine whether nondebtor contributions make a chapter 13 plan feasible is either inadequately supported by evidence or weighs in favor of a finding that Mayo's contributions are not sufficiently reliable to render the Debtor's Plan feasible as required by § 1325(a)(6).

### 2. *Contributions by Valle*

The evidence is also insufficient for the court to determine that the proposed "back-up" contributions from the Debtor's mother are sufficiently reliable to render the Debtor's Plan feasible.

The showing under the first factor is stronger because Valle is the Debtor's mother and it could be inferred that the familial connection provides her motivation for supporting the Debtor. Valle Decl. ¶¶ 1–2. However, the Debtor is an adult who has been employed with the same employer for eight years and there is no evident legal or moral obligation for Valle to support her adult daughter. Sch. I: Your Income.

There is also no evidence to support the second factor, and this weighs against a finding of feasibility. There is no indication that Valle has a history of contributing money to the Debtor or supporting her in any manner as an adult.

The third factor is satisfied because Valle testifies that she will pay any portion of the $700.00 monthly contribution not paid by Mayo for the duration of the Plan. Id. at ¶¶ 3, 5. This is the only factor that weighs in favor of a finding of feasibility.

Finally, the Debtor has failed to provide sufficient evidence to support the fourth factor, which requires that Valle be financially able to make the contribution payments she promises. The sparse evidence supplied to support Valle's ability to make the contributions, in fact, indicates that she cannot afford to do so. Her own bank printout reflects that the account balance drops below or well below $700.00 prior to each income deposit. Valle Decl. Ex. A. It may be that Valle has sufficient savings or funds elsewhere to make the contributions, but the only evidence provided with her declaration indicates that she is living paycheck to paycheck and cannot afford to do so.

On balance, the relevant factors indicate that Valle's proposed contributions are not sufficiently stable and regular and the Debtor will not be able to make the payments required under her Plan. Even if Valle is committed to supporting the

8

Debtor, she has no demonstrated history or obligation to do so, and has not provided sufficient evidence to indicate her ability to make the proposed contributions.

### 3. Conclusion on Feasibility

The contributions from Mayo or, alternatively, Valle are not supported by sufficient admissible evidence to prove that the contributions are reliable and likely to continue for the duration of the Plan. Without the contribution income, the Debtor's net monthly income drops to ($210.00) and she is unable to meet her own expenses, much less make the proposed plan payments of $490.00. Therefore, the court finds that the Debtor has failed to provide sufficient evidence to demonstrate that her proposed chapter 13 Plan is feasible as required by § 1325(a)(6). As a result, confirmation must be denied.

### B. Eligibility to be a Chapter 13 Debtor

The court also views the contribution issue in the context of eligibility. In order to be eligible to be a chapter 13 debtor, among other things, the Debtor must be an "individual with regular income." 11 U.S.C. § 109(e). An "individual with regular income" is defined as an "individual whose income is sufficiently stable and regular to enable such individual to make payments under a plan under chapter 13." Id. § 101(30). Here, the Debtor has monthly take-home pay of $4,300.00 and expenses of $4,510.00. While her income appears to be stable and regular, her monthly income is less than her monthly expenses and it is not sufficient to enable the Debtor to make chapter 13 plan payments in any amount. Therefore, the income the Debtor relies on to meet the deficit in her monthly expenses and for her $490.00 monthly payments under the Plan is the $700.00 contribution from either Mayo or Valle.

Gratuitous payments from family members and other third parties do not generally constitute regular income for purposes of § 101(30), with some exceptions. In re Porter, 276 B.R. 32, 38 (Bankr. D. Mass. 2002); In re Jordan, 226 B.R. 117, 119 (Bankr. D. Mont. 1998) (citing In re Antoine, 208 B.R. 17, 19–20 (Bankr. E.D.N.Y. 1997); In re Campbell, 38 B.R. 193, 196 (Bankr. E.D.N.Y. 1984)); see also In re

1  Santiago-Monteverde, 512 B.R. 432, 442 (S.D.N.Y. 2014). Contributions may be considered
2  regular income where the contribution is based upon moral and legal obligations, the
3  nondebtor is jointly liable for some debts, the contributions have been made in the
4  past, or where there is direct evidence of the nondebtor's assent to assume the
5  responsibility for funding the debtor's plan. Porter at 38; Jordan at 119.
6     In the present case, there is insufficient evidence to support any of the
7  exceptions generally acknowledged by other courts. There is no evident moral or legal
8  obligation for either Mayo to support his relatively recent girlfriend or for Valle to
9  support her adult daughter. There is no evidence of joint liability for any of the debts,
10 or that contributions have been made in the past by Mayo or Valle in any amount.
11 Mayo has also not agreed to assume the responsibility for funding the Debtor's Plan.
12 Mayo Decl. ¶ 4. Valle has consented to make the contributions for the duration of the
13 Plan but, as discussed above, she has not provided evidence indicating that she is
14 actually able to do so. Valle Decl. ¶ 5.
15    More specifically, the contribution from Mayo does not constitute stable and
16 regular income due to the nature of his relationship with the Debtor. Courts
17 generally reject contributions made by a live-in boyfriend or girlfriend. Jordan, 226
18 B.R. at 119–20; In re Heck, 355 B.R. 813, 824–25 (Bankr. D. Kan. 2006); In re
19 Fischel, 103 B.R. 44, 49 (Bankr. N.D.N.Y. 1989). This is not to say that contributions
20 from a live-in boyfriend or girlfriend can never be sufficiently stable and regular.
21 Rather, they must be supported by admissible evidence addressing factors similar to
22 those discussed above under the feasibility analysis. For example, at least one court
23 has accepted contributions from a live-in boyfriend where the debtor shared a
24 household with the nondebtor for eleven years, was supported by him during that
25 time, and had cared for his children and elderly mother, and the nondebtor had also
26 executed an affidavit with an unconditional promise to make the contributions until
27 completion of the plan. In re Murphy, 226 B.R. 601, 604 (Bankr. M.D. Tenn. 1998);
28 see also In re Andolino, 525 B.R. 588, 591 (Bankr. D.N.J. 2015) (overruling trustee's

Main Document    Page 11 of 12

objection to confirmation based on eligibility, but only to the extent that debtor later demonstrates his girlfriend's commitment to fund plan by competent evidence); cf. In re Loomis, 487 B.R. 296, 301–02 (Bankr. N.D. Okla. 2013) (finding evidence of contribution by fiancée not convincing where the relationship existed approximately 18 months, debtor had no access or control over fiancée's accounts, and fiancée was not legally obligated on the debts and did not assure that contributions would continue for duration of plan). In this instance, Mayo and the Debtor have failed to provide sufficient evidence that Mayo's contributions will be stable and regular due to the relative newness of the relationship, the lack of prior support, and the lack of a firm commitment from Mayo to make the contributions for the duration of the Plan.

While more compelling, the contributions by the Debtor's mother also do not satisfy § 101(30) because they are inadequately supported by evidence of their stable and regular nature. Courts are more likely to find contributions to be regular income where the nondebtor is a family member, particularly one who is obligated on some of the debts by contract or state law or where there is a lengthy history of stable payments. See e.g., In re Varian, 91 B.R. 653, 654–55 (Bankr. D. Conn. 1988) (husband obligated by Connecticut statute for debts incurred during separation); In re Campbell, 38 B.R. 193, 196 (Bankr. E.D.N.Y. 1984) (relatives jointly obligated on mortgage and had substantial self-interest in completing the plan); Rowe v. Conners (In re Rowe), 110 B.R. 712, 718 (Bankr. E.D. Penn. 1990) (son had been making the payments for five years). However, the court must still make a case-by-case factual determination that the contributing nondebtor's income is sufficiently stable and regular. In re Sigfrid, 161 B.R. 220, 222–23 (Bankr. D. Minn. 1993).

The Debtor has not argued that her mother is obligated on any of her debts by contract or law. She also has not provided admissible evidence that her mother's income is sufficiently stable and regular to allow her to make the required contribution. Even if the court were to follow these cases and allow contributions from family members, the Debtor has failed to meet her evidentiary burden to

demonstrate facts by admissible evidence that satisfy the requirements of §§ 109(e) and 101(30). For these reasons, confirmation of the Debtor's Plan is also denied on the basis that the Debtor is not an individual with regular income as defined by the Bankruptcy Code and is therefore not eligible to be a debtor under chapter 13.

### C. Conversion to Chapter 7

In light of the Debtor's failure to confirm a chapter 13 plan, the court will convert the case back to chapter 7.  This case started out as a voluntary chapter 7 case, the chapter 7 trustee had already filed a Report of No Distribution, and the Debtor was just a mere few days away from obtaining her discharge.  Discharge is the essence of federal bankruptcy law, and the centerpiece of the fresh start afforded by bankruptcy.  See Klee & Holt, supra, at 316-19.  It is in the Debtor's, the creditors, and the estate's best interests that the case is converted back to chapter 7.  11 U.S.C. § 1307(c).

### IV.    CONCLUSION

Confirmation of the Debtor's Chapter 13 Plan is denied under 11 U.S.C. §§ 109(e) and 1325(a)(6). Due to the inability to confirm a plan, the Debtor's bankruptcy case shall be converted back to chapter 7 to allow her to obtain a discharge and her fresh start under the Bankruptcy Code. The court shall enter an order converting the case in accordance with this memorandum decision.

###

Date: April 20, 2015

Scott H. Yun
United States Bankruptcy Judge